123 So.2d 261 (1960)
E. Hugo LINDQUIST and Barbara Lindquist, his wife, Appellants,
v.
Jack E. BURKLEW, Appellee.
No. 1628.
District Court of Appeal of Florida. Second District.
August 10, 1960.
Rehearing Denied October 3, 1960.
Lindsey & Cargell, St. Petersburg Beach, for appellants.
Zewadski, Di Vito & Chadwick, St. Petersburg, for appellee.
MURPHREE, JOHN A.H., Associate Judge.
This is an appeal from a summary final judgment pertaining to a real estate broker's commission.
*262 The complaint, in substance, alleged: that the broker, appellee, was employed by the owners of certain property, the appellants, to "* * * procure for them a purchaser who was ready, willing and able to purchase said property at a price to be arrived at by a public auction * *," and that the appellee was to be paid for his services as broker-auctioneer a commission of 7 1/2% of the sale price; that the property was auctioned off for $15,450; that a contract for sale, which was prepared by the broker, was then entered into between the sellers, the purchaser and the broker whereby the purchaser was to make an immediate payment of $200 on the purchase price as earnest money, a payment of $5,050 in one week, and the balance by the assumption of an existing mortgage within 30 days. The contract contained the following provisions:
"* * * I hereby accept the offer and agree to deliver the above described property at the price and upon the terms and conditions above stated. I further agree to pay the broker above named, as commission for his services herein, the sum of $1,358.75. In the event said earnest money or deposit is forfeited by said purchaser 1/2 thereof shall go to said broker and remainder to me, provided, however, that the broker's portion shall not exceed the full amount of commission herein specified * * *"
The complaint further alleged that the purchaser, after making the earnest money payment of $200, renounced the contract; the owners took no steps to enforce it and refused to pay the broker the full amount of commission which he claimed: namely, 7 1/2% of the sale price, or $1,358.75.
The owners by their answer denied that the broker had produced a purchaser who was ready, willing and able to buy said property, but admitted the other allegations of the complaint.
Upon the broker's motion for summary final judgment, based upon the pleadings, the lower court entered judgment against the owners for $1,358.75.
In entering said judgment the lower court reasoned that under the broker's agreement with the owners to sell said property at public auction he was entitled to his full commission when the hammer fell, and that, therefore, any limitation of commission that may have crept into the subsequent contract of sale was immaterial. This view, however, would seem to ignore the theory of the broker's case as alleged in his own complaint: namely, that he was employed to find a purchaser who was ready, willing and able to buy at the auction price.
The answer having denied that the purchaser was ready, willing and able to buy, and no affidavit to the contrary having been submitted in support of the motion for summary judgment, the broker was forced to rely upon the fact of the execution of a contract for sale acceptable to the sellers as the basis of his right to a commission. In doing so it would logically follow that the broker became bound by the terms of the contract.
Where a broker is employed to procure a purchaser who is ready, willing and able to buy at a specified price, he will be entitled to his commission upon the execution of a binding contract of sale by the buyer which is acceptable to the seller. Wiggins v. Wilson, 1908, 55 Fla. 346, 45 So. 1011, McAllister Hotel, Inc., v. Porte, Fla. 1957, 98 So.2d 781. For further citations see 5 Fla.Jur., Brokers, p. 64, n. 12.
Where the rights of parties impinge upon the interpretation of a written instrument, any ambiguity therein will be resolved against the draftsman. New York Life Ins. Co. v. Kincaid, 136 Fla. 120, 186 So. 675.
Applying this rule of construction to the provisions of the contract of sale which we have quoted, it seems clear that the owners never intended to pay a commission *263 of $1,538.75 in the event the purchaser defaulted after payment of only $200 on the purchase price; but, rather, it was intended that the broker would receive one half of the earnest money deposit as his commission in the event the purchaser defaulted. If the broker had not wanted it that way he should have required a larger down payment, or have drafted the contract without ambiguity.
The judgment of the lower court is reversed with direction to enter judgment for the owners, the appellants, consistent with this opinion.
KANNER, Acting Chief Judge, and SHANNON, J., concur.