406 So.2d 1196 (1981)
MILLER, COWHERD & KERVER, INC., a Florida Corporation, Appellant,
v.
Consuelo DE MONTEJO and Patrick A. Baratta, Appellees.
No. 80-818.
District Court of Appeal of Florida, Fourth District.
November 25, 1981.
*1197 Thomas E. Brandt, Fort Lauderdale, for appellant.
Maurice M. Garcia of Abrams, Anton, Robbins, Resnick, Schneider & Mager, P.A., Hollywood, for appellee-De Montejo.
Martin J. Sperry, Fort Lauderdale, for appellee-Baratta.
PER CURIAM.
Miller, Cowherd & Kerver, Inc. (hereinafter referred to as the broker) appeals a summary judgment denying a brokerage commission pursuant to an exclusive right of sale listing contract and denying damages for tortious interference with the exclusive right of sale.
The broker contends that the execution of a joint venture agreement between corporations controlled by the owner of the subject property, Consuelo De Montejo, and a developer, Mr. Baratta, constituted a "sale" under the listing contract, thereby entitling the broker to a commission. The broker also alleges that Baratta's actions in procuring the joint venture agreement constituted tortious interference with the listing agreement between the owner and the broker. We hold that the joint venture agreement did not constitute a "sale" pursuant to the listing contract and, therefore, the broker was not entitled to a commission. Consequently, the absence of entitlement to commission precludes recovery for tortious interference with the listing contract.
In November, 1976, the owner entered into a six month exclusive right of sale contract with the broker for the sale of vacant land owned by her on the Galt Ocean Mile. The parties subsequently extended this contract for another six months ending November 15, 1977. The broker's commission was ten percent (10%) of the selling price. The exclusive right of sale agreement provided:
3(B) The professional service fee is to be paid whether the purchaser be secured by you or me, or by another person, at the price and upon the terms mentioned or at any other price or terms acceptable to me. You shall also be entitled to your professional service fee if said property is sold within 90 days from the expiration date hereof to any person, or anyone acting on such person's behalf with whom you have negotiated relative to the sale of said property and have given written notice thereof to the undersigned during the term of this contract.
This agreement did not provide for a commission for putting together a joint venture.
In August 1977, Baratta contacted the broker in response to its multiple listing on the property and stated that he might be interested in the property for development of condominium apartments. After some discussion regarding price and construction costs, Baratta closed the discussion by saying that he was not interested in the property because the price was too high.
The owner was introduced to Baratta for the purpose of discussing financing for her to develop the property herself. On October 27, 1977, prior to the expiration of the listing contract, the owner and Baratta entered into a joint venture agreement to develop the property.
The agreement obligated the owner to contribute her equity in the land to the joint venture. The agreement provided that T.M.S. Corporation, with Baratta and a party named Charles P. Ferrise as principals, would develop the property into a profitable condominium project. The agreement further provided that title of the land would be taken by Top of the Mile South, a joint venture consisting of Caribbean Development and Investment Corporation, a Florida corporation, and T.M.S. Development Corporation, a Florida corporation to be formed. The owner, her husband and children were stockholders of the Caribbean Development and Investment Corporation. The agreement further provided *1198 that the parties would share equally in all profits and losses after repayment of contributions.
By warranty deed dated March 28, 1978, the owner conveyed the property to "Top of the Mile South," a joint venture consisting of Caribbean Development Corporation, a Florida corporation, and T.M.S. Corporation, a Florida corporation.
Then the broker filed this action. The trial court granted summary judgment in favor of the owner and Baratta. The order stated:
The pleadings and depositions show that the Plaintiff was not the procuring cause of any sale of the subject property and therefore is not entitled to any commission. If the Plaintiff wanted a commission in the event the owner entered into a joint venture with other parties regarding the property, it should have spelled that out in the contract. Further, since the Plaintiff is not entitled to recover a commission, there is no advantageous business relationship between Plaintiff and Defendant, De Montejo, that could have been interfered with by the Defendant, Baratta. There can be no prima facie evidence of a conspiracy to deprive Plaintiff of that to which it had no lawful claim.
Although the matter of procuring cause is irrelevant to the broker's entitlement to a commission in this case, we otherwise agree with the trial court. We, therefore, affirm.
The brokerage contract provided for a commission upon the sale of the property. This exclusive right of sale contract, however, did not define the term "sale." We agree with the trial court that a sale did not occur because the owner retained an ownership interest in the property. Rather than assuming the risk of a seller, the owner assumed the risk of a participant in a joint venture with the potential for losses as well as profits. As such, the owner decided to develop the property herself.
The exclusive right of sale contract did not address the situation where the owner develops the property herself in the form of a joint venture. The exclusive right of sale contract should be construed against the broker as drafter of the document. Nicholas v. Bursley, 119 So.2d 722 (Fla. 2d DCA 1960), Lindquist v. Burklew, 123 So.2d 261 (Fla. 2d DCA 1960). Consequently, if the broker wanted a commission in the event the owner entered into a joint venture with other parties regarding the property, the broker should have spelled that out in the contract.
The rationale of McElhinney v. Belsky, 165 Pa.Super. 546, 69 A.2d 178 (1949) supports this conclusion. McElhinney involved a transfer to a partnership of a business where a broker had an exclusive listing on the business. The broker sought a commission on the transfer of the business to a partnership. The court held:
The question is thus resolved into a reasonably simple proposition. Belsky wanted to sell his business. He hired a broker as exclusive agent to sell it for him. He promised to pay a commission to the broker even if he sold the business through his own personal efforts. Instead of making a sale and getting out of the business, he found that he had to involve himself even more by forming a partnership. If McElhinney wanted a commission on the formation of a partnership, he should have spelled that out in the contract.
The analogy of the McElhinney case to the present case is strengthened by the fact that rights, duties and liabilities of a joint venture are governed generally by principles of partnership law. See Harrell and Sumner Contracting Company v. Peabody Petersen Company, 546 F.2d 1227 (5th Cir.1977).
Accordingly, we affirm the trial court's summary judgment denying a brokerage commission and precluding recovery for tortious interference with the brokerage contract.
AFFIRMED.
ANSTEAD, MOORE and GLICKSTEIN, JJ., concur.