POLEN, Judge,
dissenting.
In this case the appellee, Investment Realty Center, Inc., sued the appellant, Harry Crowell, for recovery of a real estate commission. Mr. Crowell originally signed a non-exclusive listing agreement for the sale of his commercial property, which provided for a 3 percent or $35,000 commission, whichever was greater. Investment Realty found a prospective buyer within a matter of days and Mr. Crowell consequently proposed a counter-offer which included a provision that Investment Realty would receive $30,000 in commission for the sale. Mr. Leslie Ranee, a representative of Investment Realty, stated that he would propose the counter-offer terms to the prospective buyer.
After agreeing to propose the contract with the $30,000 commission to the prospective buyer, Mr. Ranee testified that he encouraged Mr. Crowell to list the property exclusively with Investment Realty. It had already been explained to Mr. Crowell that an exclusive listing agreement provided for a 7V2 percent commission to the broker, and Mr. Ranee testified that he explained the terms of the exclusive listing agreement to Mr. Crowell again, before presenting to Mr. Crowell a small untitled card containing blanks for general information about the property. The format of the card is, in my view, important to our decision here, and is reproduced below:
*909 FRONT OF CARD;
[[Image here]]
*910 BACK OF CARD!
[[Image here]]
Mr. Crowell testified that he saw the card and noticed that it had blanks for general information about the property; the garbage bill, the taxes, the water bill, electricity and repairs, and a line for signature. Mr. Crowell testified that he signed the card with the belief that it was to provide general information about the property. According to Mr. Crowell, he was asked to sign the card right before a Christmas party upstairs in Investment Realty’s offices, and the word “exclusive” was never mentioned.
The reverse side of the untitled card was filled from top to bottom with very fine print. The fine print detailed the terms of an exclusive listing agreement which gave Investment Realty a 7¾⅛ percent commission, and subjected the seller to liability for attorney’s fees. There was no reference on the card to its nature or its terms other than a small statement on the front side of the card, at the bottom, under the signature line, which reads “see reverse side for additional terms.” After signing the card, Mr. Crowell testified that he and Mr. Ranee went to the party and Mr. Crowell believed *911 that he still had the open, non-exclusive listing with Investment Realty.
Mr. Crowell then received a letter from Investment Realty thanking him for the exclusive listing. Mr. Crowell called Mr. Ranee and stated that he did not sign any exclusive agreement, but Mr. Ranee stated that the agreement had been signed. Mr. Crowell thereafter contacted his attorney. Mr. Crowell’s attorney sent a letter to Investment Realty rescinding the allegedly bogus agreement.
The evidence showed that Investment Realty often used another form for its exclusive listing agreements. The other form is full page and clearly marked in bold letters and titles, leaving no mystery as to its contents. Mr. Ranee used the smaller, more deceptive form, “for his own convenience.”
Mr. Crowell sold the property through another realty company, paying a $35,000 commission to the other company. Investment Realty then sued Mr. Crowell for the commission under the exclusive agreement. The trial court found in favor of Investment Realty and entered judgment in the amount of $82,500. Mr. Crowell appealed, arguing that Investment Realty breached its fiduciary duty, that the contract was unenforceable, and that there was no contract due to lack of mutual assent. I agree with the appellant that the contract was unenforceable and that Investment Realty should not have been able to prevail below. I would reverse the final judgment.
In the second point on appeal Mr. Cro-well argued that the contract was so ambiguous on its face as to be unenforceable. The card was untitled, without references to its legal effect and entirely misleading to the average person. The only hint of the devastating consequences of signing the card exists in small capital letters, under the signature line, which states “see reverse side for additional terms.” Normally, I would say that Mr. Crowell had no .recourse because he had the duty to notice and read the terms of the so called contract, even in the entirely deceptive context of the circumstances of its execution. However, in this case the contract is patently ambiguous in its form and content.
Appellee has argued that the notation “see reverse side for additional terms” is sufficient to put the signer on notice that there were additional terms of the contract which the signer should take notice. In fact, there is no language on the front side, the only side with signature lines, that suggests any contractual undertaking. An unsuspecting, unsophisticated seller might as easily think that “additional terms” referred to the terms of the property itself or the proposed sale.
An exclusive right of sale contract should be construed against the broker. Miller, Cowherd & Kerver, Inc. v. De Mon-tero, 406 So.2d 1196 (Fla. 4th DCA 1981). Here the contract should not have been enforced against Mr. Crowell because of its apparent ambiguity. The card is on one side a statement of bills, expenses and other general information, and on the back, which is unsigned, uninitialed and almost illegible, it constitutes a serious contract, irrelevant to the information on the front side and containing important legal obligations and responsibilities delegated mostly to the seller.
The decision of the majority in this case is to affirm, and this is somewhat understandable because the trial court made findings of fact at trial which cannot be disturbed on appeal. However, I believe that the law supports fair dealing among contracting parties, and I would not like to promote a policy of “seller beware.” I would reverse.