Present: Carrico, C.J., Compton, Lacy, Hassell, Keenan, Koontz, JJ., and Whiting, Senior Justice

MAUREEN K. HAGAN, ET AL.

v.     Record No. 961332     OPINION BY JUSTICE ELIZABETH B. LACY
                                              February 28, 1997
ADAMS PROPERTY ASSOCIATES, INC.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Theodore J. Markow, Judge

In this appeal, we consider whether a transfer of real property from its owner to a limited liability company in which the owner is a member constitutes the sale of the property, entitling a real estate broker to a commission authorized by a listing agreement between the owner and broker.

Ralph E. and Maureen K. Hagan (collectively "Hagan") owned the Stuart Court Apartments (the property) in Richmond. On April 30, 1994, Hagan executed an agreement with Adams Property Associates, Inc. (Adams), giving Adams the exclusive right to sell the property for $1,600,000. The agreement provided that if the property was "sold or exchanged" within one year, with or without Adams' assistance, Hagan would pay Adams a fee of six percent of the "gross sales amount." Before the year expired, Hagan, Roy T. Tepper, and Lynn Parsons formed a limited liability company, Hagan, Parsons, & Tepper, L.L.C. (HPT). By deed dated April 23, 1995, Hagan transferred the property to HPT.

Adams filed a motion for judgment seeking recovery of a commission from Hagan pursuant to the April 1994 agreement. The trial court held that Adams was entitled to a commission because the transfer of the property to HPT constituted a sale

of the property. Hagan appealed both the determination that a sale of the property occurred and the amount of the commission awarded.

Hagan first contends that transfer of legal title to the property to HPT represented his contribution to the capitalization of a new company, and capitalization of a new venture should not be classified as the sale of property, citing Southpace Properties, Inc. v. Acquisition Group, 5 F.3d 500, 504 (11th Cir. 1993); Cooley Investment Co. v. Jones, 780 P.2d 29, 31 (Colo. App. 1989); Miller, Cowherd & Kerver, Inc. v. De Montejo, 406 So.2d 1196, 1198 (Fla. App. 1981); and McElhinney v. Belsky, 69 A.2d 178, 181 (Pa. Super. 1949). Hagan also asserts that the transfer did not constitute a sale because he did not receive any present valuable consideration for his contribution. Hagan contends that, while his contribution determined what share of the ownership of the company he was entitled to receive, a new business such as HPT "involves an expectation of future profits and is always speculative." We disagree.

When Hagan transferred the property to HPT, he received more than an interest in the new company. Under the terms of the operating agreement executed in conjunction with the formation of HPT, HPT agreed to assume all liabilities existing on the property, which included the $1,028,000 unpaid balance on a first deed of trust note on the property. The record does not indicate whether the holder of the first deed of trust note released Hagan and substituted HPT as the obligor on the note.

Even assuming such substitution did not occur, Hagan nevertheless received substantial relief from his debt obligation because, upon assuming all liabilities on the property, HPT became liable to Hagan for any amount Hagan would have had to pay the holder of the first deed of trust note. Also as part of the property transfer transaction, HPT executed a second deed of trust on the property securing a note payable to Hagan for $323,000. This note was due and payable when the property was subsequently sold, and it had priority over payments to anyone other than the beneficiary of the first deed of trust. Thus, in exchange for transfer of title to the property, Hagan received relief from his debt on the first deed of trust note as well as the benefit of a second deed of trust note and an interest in HPT. These benefits received by Hagan constituted valid consideration. Brewer v. Bank of Danville, 202 Va. 807, 815, 120 S.E.2d 273, 279 (1961).

Furthermore, the cases relied on by Hagan for the proposition that the contribution of property to a limited liability company is not a sale but the capitalization of a new company are inapposite. Those cases involved the capitalization of a partnership or entity governed by partnership law. As noted in those cases, a partnership is not an entity separate from the partners themselves; thus, in such circumstances, there is no transfer of property from one person to another, but only a change in the form of ownership. Southpace, 5 F.3d at 504; Cooley, 780 P.2d at 31; De Montejo, 406 So.2d at 1198; McElhinney, 69 A.2d at 181. In this case,

however, the new venture was a limited liability company, not a partnership.

Under the Virginia Limited Liability Company Act, Code §§ 13.1-1002 through 13.1-1073, a limited liability company is an unincorporated association with a registered agent and office. §§ 13.1-1002, -1015. It is an independent entity which can sue and be sued and its members are not personally liable for the debt or actions of the company. §§ 13.1-1009, -1019. In contrast to a partnership, a limited liability company in Virginia is an entity separate from its members and, thus, the transfer of property from a member to the limited liability company is more than a change in the form of ownership; it is a transfer from one entity or person to another. Accordingly, we agree with the trial court's conclusion that Hagan transferred the title of the property in exchange for valuable consideration and that this transfer was a sale of the property.

Hagan also complains that in calculating the commission due Adams, the trial court used the wrong components to determine the gross sales amount. The trial court calculated the gross sales amount to be the sum of debt relief Hagan received from HPT, $1,028,000, plus the amount of the second deed of trust note which Hagan received from HPT, $323,000.[1]

---

[1] The parties agree that an arithmetic error occurred in the trial court's calculation of the commission and that the proper figures under the court's finding are a gross sales amount of $1,351,000 which results in a six percent commission of $81,060.

Hagan first asserts that the gross sales amount should be the fair market value of the debt, which is $775,000, the amount Tepper and Parsons paid for the first deed of trust note when they purchased it in June, 1995. We disagree.

The status of Hagan's indebtedness was altered when he transferred the property to HPT under the terms of the operating agreement, not when Tepper and Parsons individually purchased the first deed of trust note. The gross sales amount is the consideration which Hagan received from HPT, not an amount agreed upon between some other buyer and seller at another time.[2]

Finally, Hagan asserts that the second deed of trust note should not have been included as part of the gross sales amount because it was not due until the property was sold and was subordinate to the first deed of trust note and future development loans. Under these circumstances, Hagan claims, the second deed of trust note had no present value. Again we disagree. Whether the second deed of trust note would ultimately result in a payment of $323,000 to Hagan is not relevant to the measure of the value ascribed to the transaction by the parties at the time of the transaction. There is nothing speculative about a second deed of trust note in the amount of $323,000. It was part of the agreement

_____

[2]Hagan also argues that his debt relief was only the difference between the original amount of the note, $1,028,000, and the $775,000 purchase price of the note. This position is based on Hagan's contention that he had continuing liability for the first deed of trust note, a contention we addressed, supra.

surrounding the transfer of ownership of the property and represented a portion of the amount Hagan was willing to accept for the property.  Thus, the trial court properly considered the second deed of trust note as consideration received by Hagan for the sale of the property and properly included it as part of the gross sales amount for purposes of calculating the amount of commission due Adams.

Accordingly, we will affirm the judgment of the trial court holding that Hagan's transfer of title to the property to HPT was a sale of the property, that Adams was entitled to a commission on the gross sales amount, and that the gross sales amount is the debt relief plus the second deed of trust note Hagan received, $1,028,000 and $323,000, respectively, resulting in a commission of $81,060.

Affirmed.