752 A.2d 1222

**GEBHARDT FAMILY INVESTMENT, L.L.C., et al.**

v.

**NATIONS TITLE INSURANCE OF NEW YORK, INC.**

No. 1510, Sept. Term, 1999.

Court of Special Appeals of Maryland.

June 6, 2000.

James E.T. Lange, Silver Spring, for appellants.

Darin S. Levine (Richard A. Kramer and Kramer & Gorney, Chartered, on the brief), La Plata, for appellee.

Argued before DAVIS, KENNEY and MARVIN H. SMITH (Retired, specially assigned), JJ.

MARVIN H. SMITH, Judge (Retired, specially assigned).

Appellants Joseph and Faye Gebhardt ("the Gebhardts") and Gebhardt Family Investment, L.L.C. ("the L.L.C.") sued appellee Nations Title Insurance of New York, Inc. ("Nations") for breach of contract in connection with a claim under a title insurance policy. The Circuit Court for Prince George's County entered judgment in favor of Nations, and the appellants filed this appeal.

## ISSUES

The appellants argue, in essence, that:

I. The trial court erred by determining that a conveyance of the insured property from the Gebhardts to the L.L.C. terminated the title insurance policy, and

II. Even if the conveyance did terminate the policy, the Gebhardts reported their claim under the policy to Nations before the conveyance occurred and were therefore entitled to recover from Nations.

We shall affirm the judgment of the trial court.

## FACTS

The Gebhardts purchased 31.6707 acres of land in Prince George's County on September 1, 1987. They simultaneously purchased title insurance from Nations Title Insurance of New York, Inc. The policy named Joseph and Faye Gebhardt as the insureds.

In 1995, the Gebhardts learned that someone else was paying property taxes on 4.75 acres of the property. They reported to Nations that there was a cloud on the title as to the 4.75 acres, and demanded that Nations correct the situation by "negotiat[ing] a purchase from the alleged owner (who also has a cloud on title) ... and obtain[ing] a quitclaim in favor of [the Gebhardts]."

On December 18, 1996, before the matter was resolved, and apparently to facilitate their estate planning, the Gebhardts executed a special warranty deed conveying all 31.6707 acres in fee simple to Gebhardt Family Investment, L.L.C., a limited liability company created under Virginia law.[1] The Gebhardts were the sole members of the L.L.C.[2] The deed stated

---

1. *See* Va.Code Ann. (1949, 1999 Repl.Vol.), §§ 13.1–1000–13.1–1073 (the "Virginia Limited Liability Company Act").

2. At oral argument, counsel for the appellants indicated that the Gebharts' interest in the L.L.C. was held through a revocable trust. This matter was not fully explained, and further explanation cannot be gleaned from the record extract. Neither party suggests that the existence of the revocable trust has a significant bearing on the case, and we shall assume that it does not.

that the L.L.C. paid consideration of $160,990.00 for the property.

On November 13, 1997, the Gebhardts and the L.L.C. sued Nations for breach of contract for failing to resolve the cloud on title. Trial was held on July 22, 1999, and the sole issue before the court was whether the Gebhardts and/or the L.L.C. were insured under the title insurance policy. The parties apparently reached a settlement agreement as to the amount of damages that Nations would pay in the event that the court found there was coverage.[3]

Joseph Gebhardt was the only witness called. He testified to the effect that he and his wife formed the L.L.C. and conveyed the property in question to it as part of their estate planning. Mr. Gebhardt stated that "not a penny" of consideration was paid for the conveyance, and that consideration of $160,990.00 was recited on the deed so that the State could "assess the transfer taxes from the individual to the L.L.C." [4] Mr. Gebhardt added that he and his wife still own "[o]ne hundred percent" of the property and pay all of the taxes thereon.

Counsel for the Gebhardts and the L.L.C. argued that, despite the conveyance to the L.L.C.,

> we've clearly shown there's no purchase here, that the Gebhardts are still the owners and maintain the ownership interest which the policy says, in the land, and therefore they're covered under this policy as well as the L.L.C., they're both covered under this policy.

The trial court disagreed, however. It explained that the "conveyance from Joseph M. Gebhardt and Fay[e] W. Gebhardt to Gebhardt Family Investment, Limited Liability Com-

---

**3.** Counsel for the appellants attempted in the trial court to characterize the settlement agreement as a stipulation that the Gebhardts and the L.L.C. suffered damages of a certain amount. Counsel for Nations, however, refused to accept that characterization.

**4.** See Md.Code (1986, 1994 Repl.Vol., 1999 Cum.Supp.), §§ 13–101–13–209 and 13–401–13–409 of the Tax–Prop. art. (regarding State and county transfer taxes).

pany, was a conveyance to an entity distinct as a matter of law from Joseph M. Gebhardt and Fay[e] W. Gebhardt." The court acknowledged that the consideration of 160,990.00 recited in the deed might have been recited merely to allow the calculation of transfer taxes, and that the money might not actually have changed hands. It nevertheless concluded

> that the transfer or the conveyance was one for consideration. The consideration has been the benefit of the [l]imited [l]iability accorded by the State of Virginia for [l]imited [l]iability [c]ompanies. And also, the acquisition of an ownership interest in the Limited Liability Company and there was consideration by virtue of receiving certain estate planning benefits.

The court thus determined that the L.L.C. was not insured under the policy because it obtained the property by way of purchase rather than by operation of law. It determined that the Gebhardts' coverage terminated when they conveyed the property to a separate entity. The court directed that judgment be entered in favor of Nations.

Counsel for the Gebhardts and the L.L.C. then argued that, even if the conveyance terminated the Gebhardts' coverage, the Gebhardts should be permitted to recover from Nations on the ground that the loss occurred and was reported to Nations before the conveyance took place. Counsel pointed out that Mr. Gebhardt had testified that, without the disputed 4.75 acres, he didn't think the property was marketable. The court nevertheless stated that it "continue[d] to believe that the proper judgment is for the Defendant...."

## DISCUSSION

### I

### Coverage Under Policy

■ The title insurance policy issued by Nations to the Gebhardts in 1987 states, in pertinent part:

> The coverage of this policy shall continue in force as of Date of Policy in favor of an insured so long as such insured

retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from such insured, or so long as such insured shall have liability by reason of covenants of warranty made by such insured in any transfer or conveyance of such estate or interest, provided, however, this policy shall not continue in force in favor of any purchaser from such insured of either said estate or interest or the indebtedness secured by a purchase money mortgage given to such insured.

Paragraph 2(a) of Conditions and Stipulations to Policy of Title Insurance. The policy defines "insured" as

the insured named [in the policy] and, subject to any rights or defenses the Company may have had against the named insured, those who succeed to the interest of such insured by operation of law as distinguished from purchase including, but not limited to, heirs, distributees, devisees, survivors, personal representatives, next of kin, or corporate or fiduciary successors.

*Id.,* paragraph 1(a). The trial court determined, and the appellants conceded at oral argument, that the L.L.C. did not acquire the property by operation of law. The appellants thus tacitly concede that the L.L.C. is not an insured under the policy.

The argument on appeal is that *the Gebhardts* remain insured despite the conveyance to the L.L.C. There is no dispute that the Gebhardts do not remain insured by virtue of a purchase money mortgage or covenants of warranty. The appellants argue that because the Gebhardts are the sole members of the L.L.C. the conveyance was, in effect, to themselves and they still retain an interest in the property within the meaning of Paragraph 2(a) of the policy's Conditions and Stipulations.

The argument is based on a misunderstanding of the nature of limited liability companies. It is widely recognized that

[t]he allure of the limited liability company is its unique ability to bring together in a single business organization

the best features of all other business forms—properly structured, its owners obtain both a corporate-styled liability shield and the pass-through tax benefits of a partnership. General and limited partnerships do not offer their partners a corporate-styled liability shield. Corporations, including those having made a Subchapter S election, do not offer their shareholders all the pass-through tax benefits of a partnership. All state limited liability company acts contain provisions for a liability shield and partnership tax status.

6A Uniform Laws Annotated, *Foreword* to *Limited Liability Company Act* at 426 (1995). As we have indicated, the L.L.C. in question was formed under the laws of Virginia. While the record extract does not reveal whether the L.L.C. is registered to do business in Maryland, *see* Code (1975, 1999 Repl. Vol.), §§ 4A–1001–4A–1013 of the Corps. & Ass'ns art., "[t]he failure of a foreign limited liability company to register in this State does not impair the validity of a contract or act of the foreign limited liability company...." *Id.*, § 4A–1007(b). Maryland law thus recognizes the conveyance from the Gebhardts to the L.L.C.

The Supreme Court of Virginia has explained that,

[u]nder the Virginia Limited Liability Company Act, Code §§ 13.1–1002 through 13.1–1073, a limited liability company is an unincorporated association with a registered agent and office.... It is an independent entity which can sue and be sued and its members are not personally liable for the debt or actions of the company.... In contrast to a partnership, a limited liability company in Virginia is an entity separate from its members and, thus, *the transfer of property from a member to the limited liability· company is more than a change in the form of ownership; it is a transfer from one entity or person to another.*

*Hagan v. Adams Property Assocs., Inc.*, 253 Va. 217, 220, 482 S.E.2d 805, 807 (1997) (emphasis added; citations omitted). Indeed, under § 13.1–1009 of the Virginia Limited Liability Company Act, a limited liability company has the power, *inter alia:*

1. To sue and be sued, complain and defend in its name;

2. To purchase, receive, lease or otherwise acquire, and own, hold, improve, use and otherwise deal with, real or personal property, or any legal or equitable interest in property, wherever located.

. . .

Va.Code Ann. (1949, 1999 Repl.Vol.), § 13.1–1009. The Virginia Code further provides that, with certain exceptions not relevant here, "[a] member of a limited liability company is not a proper party to a proceeding by or against a limited liability company. . . ." *Id.*, § 13.1–1020. "A membership interest in a limited liability company is personal property." *Id.*, § 13.1–1038.

As the trial court recognized, when the Gebhardts' conveyed their interest in the property to the L.L.C., they effected a "transfer from one entity or person to another." *Hagan,* 253 Va. at 220, 482 S.E.2d at 807. The Gebhardts and the L.L.C. are separate entities. The Gebhardts may not file suit in their own names on behalf of the L.L.C. Nor may they be held individually liable for wrongful conduct of the L.L.C. While the Gebhardts have an interest in the L.L.C., they no longer have an interest in the property. Rather, it is the L.L.C. that has the interest in the property. To hold otherwise would be to disregard the nature and viability of limited liability companies.

Appellants's suggestion that there was no real conveyance from the Gebhardts to the L.L.C. because the L.L.C. paid no consideration for the property is utterly without merit. As the trial court pointed out, in exchange for the property the L.L.C. provided the Gebhardts with all of the benefits conferred by a Virginia limited liability company, including limited liability and certain estate planning benefits. By conveying the property under special warranty deed, moreover, the Gebhardts covenanted to protect the L.L.C. only against claims made "by, through, or under" the Gebhardts, as grantors. *Dillow v. Magraw,* 102 Md.App. 343, 365, 649 A.2d 1157,

1168 (1994), *aff'd*, 341 Md. 492, 671 A.2d 485 (1996). They did not warrant title against a claim of superior title made by someone else. *See id. See also* Code (1974, 1996 Repl.Vol.), § 2–106 of the Real Prop. art.; *Kendall v. Rogers*, 181 Md. 606, 611, 31 A.2d 312, 314 (1943). There is no suggestion that the alleged cloud on title was created by any action or inaction on the part of the Gebhardts while the property was titled in their names. The Gebhardts thus transferred from themselves to the L.L.C. the problem of the cloud on title as to the 4.75 acres. Should the other persons claiming title to the 4.75 acres bring an action to quiet title, the L.L.C, rather than the Gebhardts, would be required to defend and the Gebhardts could not be held personally liable. *Compare Hagan*, 253 Va. at 220, 482 S.E.2d at 807 (person who transferred real property to Virginia limited liability company in which he was one of several members effectively sold the property such that a real estate agent was entitled to a commission for the sale, and consideration for the sale included limited liability company's assumption of liabilities on property).

The deed recites that the L.L.C. paid $160,990.00 for the property. The appellants now argue that no money actually changed hands and that the figure was included on the deed only for the purpose of calculating transfer taxes. The argument is circular, however, in that a transfer tax is "a tax imposed on the transferring of property." Black's Law Dictionary 1472 (7th ed.1999). If there had been no conveyance, there would have been no tax. *Compare Dean v. Pinder*, 312 Md. 154, 164, 538 A.2d 1184, 1189 (1988) (where property owners paid transfer taxes upon conveyance of property to corporation in which they were sole shareholders, then sought refund of taxes on ground that they did not actually convey property but merely changed title of ownership, the Court of Appeals upheld imposition of taxes and explained that "where a corporation takes title to real property, it holds that property in its own name and right and a stockholder, as such, does not hold legal title"). In any event, upon executing the deed to the L.L.C., the Gebhardts reaped the limited liability and estate planning benefits conferred by the Virginia Limited

Liability Company Act. Having accepted those benefits, it is disingenuous for the Gebhardts to now deny that the conveyance ever took place. *Cf. Faller v. Faller,* 247 Md. 631, 233 A.2d 807 (1967) (where wife accepted benefits under separation agreement and for several years treated agreement as if valid, she was estopped from challenging validity of agreement after husband's death).

## II

### Report of Claim Prior to Termination of Coverage

■ The appellants argue, in the alternative, that the Gebhardts should be permitted to recover from Nations even if the title insurance policy was terminated by the conveyance. They posit that the Gebhardts suffered a loss and reported that loss to Nations before the conveyance took place. The appellants quote Joyce D. Palomar, *Title Insurance Law* § 4.04[1][a] (1997), for the proposition that, "[w]hile a transfer of title terminates future *coverage,* so long as the insured held title at the time of its loss, the insured's subsequent transfer of title does not terminate its pre-existing *claim.*" (Emphasis in original).

The appellants admit in their brief that "[t]here has, as yet, been no monetary loss." They nevertheless contend that they suffered a loss in that "a title which has a known overlap cannot be said to be 'undamaged.' " Presumably, the appellants believe, as Mr. Gebhardt testified at trial, that such property is unmarketable. Assuming *arguendo* that there is a "known overlap"—and the record is unclear in that regard—the fatal flaw in this reasoning is that the Gebhardts successfully conveyed the entire property, including the 4.75 acres in question, to the L.L.C. by way of a special warranty deed. As we have explained, the L.L.C. is a separate entity. The problem of the cloud on title is now the problem of the L.L.C. and not the Gebhardts. If any loss is suffered because of the cloud on title, it will be suffered by the L.L.C., which was not an insured under the policy either before or after the conveyance.

**JUDGMENT AFFIRMED; APPELLANTS TO PAY THE COSTS.**