PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

GENERAL TECHNOLOGY APPLICATIONS,
INCORPORATED, a dissolved Virginia
corporation,

               *Plaintiff-Appellee,*

        v.

EXRO LTDA,

       *Defendant-Counterclaimant-*
                  *Appellant,*

        v.

GENERAL TECHNOLOGY APPLICATIONS,
INCORPORATED, a dissolved Virginia
corporation; JERRY C. TRIPPE; JAMES
G. COUCH; DENIS M. NEILL; THOMAS
T. SCAMBOS; WILLIAM WEITZEN;
PAUL F. WATERS; ALBERT F.
HADERMAN,

         *Counterclaim Defendants-*
                  *Appellees.*

No. 03-1860

---

EXRO LTDA, derivatively on behalf
of EXG LLC;

             *Plaintiff-Appellant,*

        v.

DENIS M. NEILL; THOMAS T.
SCAMBOS; WILLIAM WEITZEN; PAUL F.
WATERS; ALBERT F. HADERMAN; JOHN
W. O'CONNELL; STEVEN PERLES;

RICHARD B. WEITZEN; TERRY A.
CRAIG; ESTATE OF WILLIAM WEITZEN;
ESTATE OF DAVID A. WRIGHT;
GENERAL TECHNOLOGY, LLC; GTA
LLC; JOHN AND JANE DOES 1-200,
                    *Defendants-Appellees,*

EXG LLC,

                              *Defendant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-02-1706-A; CA-03-466)

Argued: May 4, 2004

Decided: October 28, 2004

Before WILKINS, Chief Judge, MOTZ, Circuit Judge,
and C. Arlen BEAM, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

Vacated and remanded with instructions by published opinion. Senior
Judge Beam wrote the opinion, in which Chief Judge Wilkins and
Judge Motz joined.

**COUNSEL**

**ARGUED:** Thomas Joseph Hall, CHADBOURNE & PARKE,
L.L.P., New York, New York, for Appellant. John Patrick Rowley,
III, HOLLAND & KNIGHT, L.L.P., McLean, Virginia; Robert Powel
Trout, TROUT & RICHARDS, P.L.L.C., Washington, D.C., for

Appellees. **ON BRIEF:** Gregory J. Kerr, Jennifer L. Frattini, CHAD-BOURNE & PARKE, L.L.P., New York, New York; Paul B. Terpak, David J. Gogal, BLANKINGSHIP & KEITH, Fairfax, Virginia, for Appellant. Richard O. Duvall, Jennifer A. Short, Robert T. Hicks, HOLLAND & KNIGHT, L.L.P., McLean, Virginia; John Thorpe Richards, Jr., TROUT & RICHARDS, P.L.L.C., Washington, D.C., for Appellees.

---

## OPINION

BEAM, Senior Circuit Judge:

Two cases give rise to this appeal. Both originated in state court and were removed to federal court under 28 U.S.C. § 1441. They were later consolidated. To summarize, and possibly oversimplify, Exro, Ltda. (Exro) asserted various claims against a variety of individuals and GTA, Inc. (GTA). The basic claim was that GTA and the individuals violated Exro's right to litigation proceeds that GTA recovered in a patent-infringement suit. GTA and the other parties adverse to Exro prevailed below through dismissal and summary judgment motions. We conclude the district court lacked jurisdiction, vacate the district court's judgments, and remand the case with instructions to remand the case to state court.

I

GTA is a Virginia corporation with its principal place of business in Virginia.[1] Exro is a foreign corporation organized under the laws of Columbia, South America, where it conducts its business. GTA and Exro decided to pursue a business venture to produce and market a drag reduction additive (DRA). The DRA is a product GTA developed that, as the name suggests, reduces the drag caused by petroleum products moving in pipelines. GTA held patents on the technology used to make this product. GTA and Exro created a Virginia limited

---

[1] GTA has terminated its corporate existence, but, under Virginia law, it continues to exist for the purposes of this suit. Va. Code Ann. § 13.1-755.

liability company called EXG, L.L.C. (EXG), through which they would pursue the DRA business. EXG had two members at its inception, Exro and GTA, as well as four managers charged with operating the company. Two of these managers were Exro directors, and the other two were GTA directors.

In the EXG Operating Agreement, Exro, GTA, and EXG promised to do certain things. Exro promised to arrange funding through outside investors, while GTA promised to license the intellectual property associated with the DRA. EXG promised to pay a licensing fee and royalties for the use of that technology. The Operating Agreement says that these initial capital contributions were to be contributed as of the "effective time" of the agreement. Exro claims GTA contributed a patent license to EXG as of the effective time of the agreement, while GTA argues its contribution was a promise to give a patent license that was never triggered because EXG did not pay the licensing fee and Exro did not arrange for funding.

EXG never successfully produced or marketed the DRA. As it turns out, a competitor in the field, Conoco, Inc. (Conoco) was infringing on the patented technology and had thereby produced a superior product. The litigation on appeal centers on that infringement. GTA successfully sued Conoco. The total amount awarded for the infringement was approximately $60 million. EXG was not a party to the infringement action. Exro, once it learned of the award, demanded that GTA pay it half of the proceeds of the Conoco litigation. According to Exro, EXG had an exclusive license to the GTA patents, making the infringement award EXG's. Exro, as a member of EXG, claimed entitlement to its membership share of the funds. GTA refused, dispersed the funds to its shareholders, and this litigation ensued.

As indicated, two different suits have brought about this appeal. The first initially involved arbitration. After Exro demanded arbitration of the dispute, GTA filed a claim in a Virginia state court against Exro seeking a declaration that the dispute was not arbitrable. Exro removed the case to federal court under 28 U.S.C. § 1441 and apparently waived arbitration. Exro then asserted counterclaims against GTA, the two GTA-affiliated EXG managers, and several GTA shareholders. As to GTA, Exro's counterclaims centered on EXG's

rights under the patent license that GTA allegedly gave EXG. The counterclaims made against the individuals were also premised on that license. GTA amended its complaint to assert a claim against Exro for breaching the EXG Operating Agreement and sought a declaration that GTA owed none of the Conoco recovery to Exro. The district court dismissed the counterclaims Exro made against the individuals (the two EXG managers and the GTA shareholders) upon those parties' motion to dismiss. And it dismissed one of the counterclaims made against GTA upon GTA's motion for summary judgment.

A second state court suit followed. Exro styled this suit as a derivative action, filed on EXG's behalf, against EXG and the individuals dismissed from the previous action. In the derivative action, Exro asserted the same claims it had made against those individuals in the GTA v. Exro litigation. Exro also named 200 John and Jane Doe defendants who were GTA shareholders, asserting various claims against them. The defendants removed the case to federal court. Exro moved to remand the case, arguing there was no diversity jurisdiction. The district court did not rule on this motion and consolidated the case with the already pending GTA v. Exro litigation.

Once consolidated, GTA moved for summary judgment on Exro's counterclaims and for judgment on the pleadings on the claims it made against Exro. The individual defendants also moved to dismiss the claims made against them. The district court granted these motions on the merits.

## II

We must first address jurisdiction. Standing is a jurisdictional issue we must consider independently. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

> Standing does not refer simply to a party's capacity to appear in court. Rather, standing is gauged by the specific common-law, statutory or constitutional claims that a party presents. "Typically, . . . the standing inquiry requires careful judicial examination of a complaint's allegations to

ascertain whether the particular plaintiff is entitled to an adjudication *of the particular claims asserted*."

*Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 77 (1991) (alterations in original) (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984)). Our jurisdictional inquiry includes both constitutional and prudential aspects of standing. *Elk Grove Unified Sch. Dist. v. Newdow*, 124 S. Ct. 2301, 2308-09 (2004). Prudential concerns include the notion that a plaintiff "generally must assert his own legal rights and interests." *Hodel v. Irving*, 481 U.S. 704, 711 (1987). In a diversity case, we must consult state law to determine the nature of the litigant's rights and whether he is entitled to assert the claims he makes. *See Gallagher v. Cont'l Ins. Co.*, 502 F.2d 827, 832-33 (10th Cir. 1974); *cf. Newdow*, 124 S. Ct. at 2311 (looking to state law). A litigant bringing a diversity action (or seeking removal on that basis) can have no greater ability to assert legal rights created under state law than it would have in the state forum. "We are obligated to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated. Therefore, '[i]f federal jurisdiction is doubtful, a remand [to state court] is necessary.'" *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc) (alterations in original) (quoting *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)). "Likewise, it is equally well-settled that the parties' characterization of themselves or their claims is not determinative for federal jurisdiction purposes." *Roche v. Lincoln Prop. Co.*, 373 F.3d 610, 615-16 (4th Cir. 2004).

A.

With regard to the initial suit, GTA v. Exro, Exro's counterclaims are made individually and not derivatively—i.e., Exro seeks recovery on its own behalf. In those counterclaims, Exro claimed that GTA licensed its patent rights to EXG; that this license was "exclusive" and it therefore carried an obligation to turn the proceeds over to the licensee; and, thus, GTA must share the proceeds it recovered from Conoco with EXG (and therefore Exro as a member of EXG).

All of Exro's counterclaims are based on the patent license it says EXG had—a license that, if it existed, gave certain rights to EXG.[2]

---

[2]We express no opinion on whether an "exclusive licensee" can demand a share of the proceeds of an infringement action prosecuted by

Exro itself has no rights in the patent. A Virginia limited liability company, in contrast to a partnership, is an entity separate from its members, and it may acquire property, sue, or be sued. *Hagan v. Adams Prop. Assoc., Inc.*, 482 S.E.2d 805, 807 (Va. 1997); Va. Code Ann. § 13.1-1021. The property of such an entity, once acquired, "vests in the limited liability company." Va. Code Ann. § 13.1-1021. Statutorily, the members of the limited liability company have "no right to demand and receive any distribution from a limited liability company in any form other than cash," *id.* § 13.1-1034, and, under EXG's Operating Agreement, "[n]o Member . . . [has] the right to demand and receive property other than cash." Because it is EXG's property that gives rise to EXG's alleged legal right to the Conoco proceeds, the claim Exro seeks to assert is EXG's. Exro's right to a cash distribution from EXG is not directly at issue and is insufficient to give Exro standing to assert EXG's legal rights. And even though Exro could in certain circumstances assert EXG's claim against GTA on EXG's behalf—i.e., derivatively under Va. Code Ann. § 13.1-1042 —Exro has not done that in its counterclaims. Virginia strictly adheres to the derivative-claim rule. *See Simmons v. Miller*, 544 S.E.2d 666, 673-75 (Va. 2001) (refusing to create an exception for direct claims in cases of closely held corporations). Thus, Exro has no standing to assert EXG's claim for money GTA recovered from Conoco.

One wrinkle appears. The State of Virginia, before the Conoco judgment was rendered and before Exro commenced this litigation, cancelled EXG's certificate of organization. This may give Exro standing to pursue the claims it has made if EXG's dissolution gave its member, Exro, the authority to pursue EXG's claim individually.

As earlier stated, the license Exro claims EXG had was EXG's. Va. Code Ann. § 13.1-1021. EXG's certificate of operation was automatically cancelled in December 1999 for failing to pay its annual registration fee. *See id.* § 13.1-1064(B)(1). Under Virginia law, once the certificate of operation was cancelled, EXG was automatically "dis-

his licensor (the patent owner) absent an express agreement to share those proceeds. Exro cites no authority for that premise and we have found none.

solved" and obligated to wind up. *Id.* Winding up can generally be done by the members. *Id.* § 13.1-1048(A). However, if a manager-managed company like EXG has its certificate of operation automatically cancelled under section 13.1-1064, the property and affairs of the company automatically pass "to its managers . . . as trustees in liquidation." *Id.* § 13.1-1064(B)(3). Liquidating trustees have the power to prosecute and defend suits "in the name and on behalf of the limited liability company." *Id.* § 13.1-1048(B); *accord id.* § 1064(B)(1) & (3).

With the license in the managers' hands, holding it in trust for the benefit of EXG's creditors and members, Exro is still without standing to pursue its own action against GTA. To the extent, if any, GTA is obligated to pay part of the Conoco recovery over to EXG under the purported license, the cancellation, dissolution, and transfer placed EXG's rights in the trustees' hands. This does not mean that Exro could not assert the trustees' rights to collect trust property. *See* Restatement (Second) of Trusts § 282 (1959). And it does not necessarily mean that a derivative action is barred during the post-dissolution winding-up process. But it does mean that the legal rights at issue in this particular situation are not Exro's to pursue individually. We see nothing in the limited liability company statute that gives a member any greater rights in a manager-managed company's property after it has been automatically dissolved under section 13.1-1064(B) than before. Thus, Exro is without standing to pursue its counterclaims against GTA.

Exro had no standing to assert the counterclaims against the individuals it brought into the GTA v. Exro litigation for the same reasons. Exro's claims against the individual GTA shareholders and the EXG managers were premised on EXG's rights, which, if they exist at all, vested in EXG and passed to the liquidating trustees.

Finally, Exro's lack of standing with regard to the counterclaims it seeks to assert is no less applicable to the claims GTA makes against Exro. Quite simply, the wrong party has been sued. The real controversy asserted is between GTA and EXG. Jurisdiction is therefore lacking and the case must be remanded to state court under 28 U.S.C. § 1447(c), where, possibly, the defect can be cured by adding the proper parties.

## B.

As to the derivative action, Exro purports to act on behalf of EXG —derivatively. Given the automatic cancellation of EXG's operating certificate, it is unclear whether EXG, its trustees in liquidation (i.e., EXG's managers), or both can assert the legal rights that Exro is trying to assert. Whether EXG continues to exist for purposes of this suit is a question entwined with this issue. Virginia law provides no clear answer, and we will not answer these difficult issues of state law because we lack jurisdiction in any event. If EXG continues to exist, there is no diversity jurisdiction. If EXG ceased to exist, then Exro, which asserts only EXG's rights in this derivative action, has no rights to assert. We assume for purposes of this analysis that EXG continues to exist.

We start with the citizenship of the various parties. EXG has the citizenship of its members: Columbia, South America, and Virginia. *See, e.g.*, *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 828-29 (8th Cir. 2004) (one of many cases in which the court concludes a limited liability company is assigned the citizenship of its members). Exro is Columbian for diversity purposes and, as is relevant here, at least some of the named defendants are Virginia citizens.

Next, we evaluate whether both sides of the controversy are completely diverse. In a derivative action, where there are three parties conceptually presented as "A" v. "B" v. "C," the parties must be aligned for diversity purposes. Generally, the represented entity (i.e., the entity on whose behalf the suit is initiated— "B"), here EXG, is aligned as a defendant. But EXG can be realigned as a plaintiff under certain circumstances. *See Smith v. Sperling*, 354 U.S. 91 (1957). In either case diversity jurisdiction does not exist. If we align EXG as a defendant, then Exro (Columbia) is suing EXG (Columbia and Virginia) and the other defendants (Virginia). The alien citizenship on both sides of the controversy destroys diversity. *See Universal Licensing Corp. v. Paola Del Lungo S.P.A.*, 293 F.3d 579, 581 (2d Cir. 2002) ("diversity is lacking . . . where on one side there are citizens and aliens and on the opposite side there are only aliens"). If we align EXG as a plaintiff, then Exro (Columbia) and EXG (Columbia and Virginia) are suing the various defendants (Virginia). Virginia's pres-

ence on both sides of the controversy destroys diversity. *See* 28 U.S.C. § 1332(a)(3) (diversity jurisdiction exists between "*citizens of different States* and in which citizens or subjects of a foreign state are additional parties") (emphasis added).[3]

The defendants, in support of federal jurisdiction, argue that EXG's "dual citizenship" means that we should ignore its alien status and regard it as a Virginia citizen for the purposes of diversity jurisdiction.[4] The "dual citizenship" cases the defendants cite are inapplicable. *Unies v. Kroll & Linstrom*, 957 F.2d 707, 711 (9th Cir. 1992), is one example. In that case, after four years of litigation, the defendant law partnership moved to dismiss the action for lack of subject matter jurisdiction. It argued that one of its lawyer partners was both a foreign citizen and a United States citizen. Thus, it argued, there was no diversity between it and the foreign plaintiff. The court initially cited the defendant's lack of evidence and then "reject[ed] the argument," stating that "[d]ual citizenship (even when established) does not defeat jurisdiction." *Id.* (citing *Sadat v. Mertes*, 615 F.2d 1176, 1187 (7th Cir. 1980) ("only the American nationality of the dual citizen should be recognized")). The court was not clear, however, as to whether it was speaking of the individual's dual citizenship or the resulting dual citizenship of the partnership. If it was the latter, then *Unies* seems to stand for the proposition that a court is free to disregard partial alien citizenship when evaluating a partnership's or, by extension, other unincorporated associations' citizenship.

However, in *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 990 (9th Cir. 1994), the court retreated by

---

[3]Diversity jurisdiction is also judged by the real parties in interest. *Roche*, 373 F.3d at 615. As we explained above, the legal rights asserted here belong to EXG. Thus, one of the real parties in interest is EXG. *Ross v. Bernhard*, 396 U.S. 531, 538 (1970) ("Although named a defendant, [the corporation in a derivative suit] is the real party in interest, the stockholder being at best the nominal plaintiff."). The various defendants are the other real parties in interest. Under this reasoning, a suit between EXG and the various defendants is not within the federal courts' diversity jurisdiction because there are Virginians on both sides.

[4]This argument could only work in this case if EXG was properly aligned as a defendant.

classifying *Unies* as involving only individuals. Because Congress had established dual citizenship for corporations, but not for individuals, the court concluded it could not disregard the dual citizenship of the corporation at issue there. The *Nike* court makes it clear that the *Unies* court's statements about dual citizenship were with regard to the individual that the partnership claimed was both a foreign citizen and an American citizen. EXG is certainly not an individual with this sort of dual citizenship.

Exro, on the other hand, argues that EXG is like a corporation whose citizenship can be "dual" under cases like *Nike*, and, therefore, its foreign citizenship cannot be ignored. While a manager-managed limited liability company looks and acts somewhat like a corporation, especially with regard to derivative actions and members' claims, this argument misses the mark. A limited liability company organized under the laws of a state is not a corporation and cannot be treated as such under section 1332 until Congress says otherwise. *GMAC Commercial Credit LLC*, 357 F.3d at 829 (quoting *Carden v. Arkoma Assocs.*, 494 U.S. 185, 197 (1990)). It is an unincorporated association, akin to a partnership for diversity purposes, whose citizenship is that of its members. Thus, EXG is a citizen of Columbia, South America, and Virginia. We can find no basis upon which to disregard either aspect of EXG's citizenship.[5]

## III

Exro and GTA chose to create an entity through which to pursue their development of DRA. They cannot now disregard, and we cannot ignore, that aspect of their relationship. Accordingly, we vacate

---

[5]*Grupo Dataflux v. Atlas Global Group, L.P.*, 124 S. Ct. 1920 (2004), suggests the result we reach here. In that case the plaintiff partnership, Atlas, had partners that were Mexican citizens and partners that were United States citizens. The defendant, Grupo, was a Mexican corporation. Diversity jurisdiction was therefore lacking. Although the Court did not specifically validate this aspect of the case because it was concentrating on whether a later withdrawal of the foreign partners could cure the jurisdictional defect, it would not have reached the issue it did address if the case presented no underlying jurisdictional defect. Even the dissenters saw such a defect. *Id.* at 1932 (Ginsburg, J., dissenting).

the district court's summary judgment and dismissal orders and remand this case to the district court with instructions to remand it to state court.

*VACATED AND REMANDED WITH INSTRUCTIONS*