177 N.J. Super. 117 (1980)
425 A.2d 701
JOSEPH SYLVANIA, PLAINTIFF,
v.
HARRY STEIN, DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
COMMONWEALTH LAND TITLE INSURANCE COMPANY, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Chancery Division Atlantic County.
Decided November 17, 1980.
*118 Harris Aron for plaintiff (Valore, McAllister, Aron & Westmoreland, attorneys).
Arthur Momjian for defendant and third-party plaintiff (Cooper, Perskie, Katzman, April, Niedelman & Wagenheim, attorneys).
David A. Spitalnick for third-party defendant (Vasser, Spitalnick & Mazin, attorneys).
HAINES, J.S.C.
Plaintiff Joseph Sylvania claims a right-of-way over property of defendant Harry Stein. Title to the premises was insured by Commonwealth Land Title Insurance Company, through its predecessor, South Jersey Title and Insurance Company. Stein, *119 claiming to be protected by the policy, demands that Commonwealth defend the action, a demand which it resists. Stein and Commonwealth have filed cross-motions for summary judgment on the question of Stein's coverage under the policy. The essential facts are not disputed and the motions therefore permit a final disposition of the question raised. R. 4:46.
The title policy was issued to William Stein, who then owned the property, on April 8, 1939. William Stein died. His will devised the premises to his widow, Yetta Stein, who transferred the premises to Anne Mann in 1942. Mann and her husband conveyed the property to defendant Harris B. Stein a few months later. All of these transferees, except Yetta Stein, acquired their rights in the property by deeds containing covenants of general warranty. Neither Commonwealth nor its predecessor received any notice of any conveyance after its policy was issued; it did not consent to any assignment of its policy of insurance and did not agree to insure any title holder other than William Stein.
The title policy contains the following condition:
All interest in this Policy (saving that for damages accrued) shall cease by the transfer of the Policy, or of the title insured; except where the transfer of the Policy is authorized by its conditions, and transferred and approved. Partial transfers of title shall reduce the insurance in the proportion of the value of the estate transferred to that retained. Such transfers shall not affect the interest of a holder of this Policy transferred with the consent of the Company endorsed, as collateral security.
It also lists three circumstances which permit the policy to be transferred. None applies in the present case.
Title insurance policies, being contracts of adhesion, are construed most favorably to the insured; if policy language is subject to different readings, the one most favorable to the insured should be employed. Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 513 (1965); Keown v. West Jersey Title and Guar. Co., 147 N.J. Super. 427, 440 (Law Div. 1977), rev'd 161 N.J. Super. 19 (App.Div. 1978). Stein couples this rule with his doubtful claim that an insurance policy will remain in force, notwithstanding a transfer of the property insured, when there has been no increase *120 in risk, citing Sandler v. N.J. Realty Title Ins. Co., 36 N.J. 471 (1962). This case held that
... Unlike fire or accident policies which are for fixed terms and which are such as contemplate a reappraisal of the risk on the part of the insurer at the end of the term, title policies by nature are without time limit and are not subject to reassessment of the risk for they insure solely on the basis of what is already irretrievably past. It follows, then, that the risk cannot be increased by a conveyance from and a subsequent reconveyance to the insured. There being no increase in risk and it being undisputed that absent the mesne conveyance the insurance coverage would remain in full force and effect, a reimposition of liability works no injustice to the insurer. [at 482]
Stein, arguing that no increase in risk has occurred here as a result of any title transfer, claims that the provisions of the insurance policy which eliminate coverage in the event of such transfer should be construed to require that elimination only when there has been an increase in risk. His argument not only overlooks the plain language of the policy, but also ignores Sandler's basic holding. That case involved the transfer of property to the insured's wholly owned corporation and a later transfer back to him. The court made it clear that the insurance was not in force during the period when the insured did not have title, saying (at 482): "The reconveyance to him served merely to re-establish the status which existed at the inception of the insurance contract. The policy was, at most, only suspended during the time that Sandler Realty Co. held title and was revived upon reconveyance to him."
The Stein argument also fails to meet the following rule set forth in Sandler:
Although there is no unanimity in other jurisdictions as to whether an insured must have an insurable interest both at the time of making the insurance contract involving indemnity against damage to property as well as at the time of actual loss, our courts have held that the parties are free to contract for indemnity if the interest existed at some time during the term of the risk and upon the occurrence of the loss. [at 481]
See also 4 Appleman, Insurance Law and Practice, § 2241 (1943). Under this rule Harris Stein would not be covered by the insurance policy. He claims through his predecessor in title, William Stein, whose interest in the property ended with his death. The loss, of course, occurred much later. Consequently, *121 the existence of the insurable interest of the insured, William Stein, and the occurrence of the loss do not coincide, unless the domino theory constructed by Stein prevails.
Stein argues that he may bring suit against his predecessor in title for breach of the covenants contained in his deed, resulting in successive suits against successive predecessors in title until the estate of William Stein is reached as a defendant, as which point Commonwealth would be required to defend the estate.[1] He suggests that this kind of circuitous action should not be encouraged under our Rules, that the ultimate liability of the insurer should be recognized now and settled. The theory is intriguing; if it is supportable, title insurance policies could be enforceable forever, an unhappy circumstance for insurance companies. On the other hand, if an owner of real property insures his title and thereafter, in reliance upon the absence of any title exceptions in his insurance policy, conveys the property to another, it may be inequitable to hold that the coverage upon which he relied was thereby lost. No direct authority has been found dealing with the problem.
Indirect support for Stein's position may be found in Sandler's approval of the proposition, quoted from Clinton v. Norfolk Mut. Fire Ins. Co., 176 Mass. 486, 57 N.E. 998 (Sup.Jud.Ct. 1900), that
... A total transfer of his interest ... defeated the policy. But any change short of a complete transfer of his entire interest did not have that effect. The general rule was and is that, in the absence of any provision to the contrary in the policy, any change in the insurable interest of the insured, whether by a complete sale of only a part of the property or a change in the title to a part or the whole of the property, does not avoid the policy which has once attached, provided that at the time of the loss the insured has an insurable interest. It is necessary that there should be an insurable interest at the time of the contract and at the time of the loss; but if at the time of the loss the insured has parted with only a part of his interest the policy is valid as to the part he retained. [at 481-482]
Thus it may be argued that a transferor of title who remains liable for a title defect in the property conveyed, provided the *122 defect was one insured against, continues to enjoy coverage because his liability, created by covenant or otherwise, represents a continuing insurable interest in the property.
The proposition is supported by authority. Appleman, supra, § 2123 at 35, states that an insurable interest exists "when the insured derives pecuniary benefit or advantage by the preservation or continued existence of the property or will sustain a pecuniary loss from its destruction." This definition usually finds its way into fire insurance cases, where the problem most often arises. Appleman continues by stating (at 36-37) that: "Reasonable expectation of benefit from preservation of the property is thus sufficient or liability to loss from damage to it will be sufficient." Further, he makes it clear that "A right of property is not an essential ingredient of insurable interest; any limited or qualified interest, whether legal or equitable, or any expectancy of advantage is sufficient." (at 37). It may be a purely equitable interest if, when the property is destroyed, a loss will necessarily result to the insured. Kozlowski v. Pavonia Fire Ins. Co., 116 N.J.L. 194 (E. & A. 1936). The interest may arise from a contract concerning the property. Harrison v. Fortlage, 161 U.S. 57, 16 S.Ct. 488, 40 L.Ed. 616 (1896). Prince v. Royal Indem. Co., 541 F.2d 646 (C.A.Ill. 1976), cert. den. 429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 540 (1977), considered the insurable interest of a person who sold his property, assigned his fire insurance policy to the purchaser and agreed to obtain the insurance company's approval of the transfer. He failed to obtain the approval. The court, finding him liable for this breach of his agreement, held that his liability created an insurable interest, since there was a substantial risk of loss to him in the event a fire occurred. His coverage therefore remained in force.
These authorities permit the logical conclusion that William Stein retains an insurable interest in the property to the present time, assuming he is liable for the alleged title defect. There are a number of reasons, however, why that conclusion *123 provides no comfort to the present title holder, Harris Stein. In the first place, the policy expressly states that "all interest in this policy ... shall cease by the transfer ... of the title insured." The condition limits the risk insured against, thereby favorably affecting the amount of the premium charged for the insurance. A title insurance company which issues a policy providing coverage so long as the insured retains any liability with respect to the insured property would be obliged to increase its premium for that coverage, not because of any change in risk, but because of an increase in the time of its exposure to risk. Consequently, there is a real basis for the condition and no public policy which denies its use. It is therefore a condition which the courts must enforce.
Neither law nor logic prevents the issuance of a title insurance policy to protect a property owner against liability resulting from title defects which arise after he transfers title. The instant policy, however, covers only other losses of the insured; it does not provide any protection for any continuing liability he may have after he transfers his title. While that liability may be defined as an insurable interest, it is separate from other property interests and will not be deemed within the coverage of a title policy which, as here, clearly excludes it.
There is a further problem with this concept: the liability of one who transfers title to real property is subject to his control. He may disclaim all liability. He may convey with covenants of general warranty or only with covenants of special warranty. He may convey by quitclaim deed, making no representations as to the quality or quantity of his title. A title insurance company cannot be expected to subject itself to the vagaries of an insured's actions with respect to the continuation, restriction or discharge of liability for title defects unless it has contracted to do so. This assertion is supported by the general rule set forth in Appleman, supra, § 2241:
A fire contract or other policy of insurance is considered a personal contract in that the hazards which the company elects to assume are hazards concerned with the contracting individual ... the insurance running to the individual rather *124 than upon the property. If the insured then parts with all interest in the property prior to the loss it is not covered.
Stein faces additional difficulties in the pursuit of his domino theory. First, it is speculative: unless he sues for breach of his deed covenants, as he has not done, it cannot be said with any certainty what claims and defenses will be involved or whether any covenantor who is made a party will in turn join his predecessor in title as an additional party. Second, it does not appear that Yetta Stein has the protection of any covenants, since she acquired title from the insured, William Stein, by will.
Capping these reasons for the rejection of Stein's claims is the fact that Schedule B of the title policy excepts "rights of way, public or private" from coverage. Such easements present special hazards to a title insurer because the nature of their use and the burdens imposed by them are not always clear from an examination of recorded documents. Frequently, rights of way are affected by uncertain claims of adverse user and, as here, by disputes over the extent of any use to which they may be put. Commonwealth, through its predecessor, refused to cover these risks, the advisability of that refusal becoming obvious in the light of the present case. No rule of law requires such coverage. The exclusion is clear and effectively eliminates all obligations of the company with respect to the right of way which is the subject of this suit.
Commonwealth's predecessor also limited coverage to "all right, title and interest of the City of Atlantic City," an earlier grantor, in the premises affected by the right of way. Stein argues that this is contrary to public policy and to any reasonable interpretation of the title coverage provided, since a literal reading of this language would eliminate all insurance for that tract; if the city had no "right, title and interest" there would be no insurance. This argument might be attractive if the property so described was the only one covered. However, the policy included an additional tract of land, title to which was insured without this limitation. The policy therefore provided *125 actual coverage and was not illusory. The use of the words "right, title and interest" when describing the parcel conveyed by the city permitted the informative inclusion of its description in the policy without exposing the title company to unknown risk. The same result could have been achieved by omitting the description. That would not have been informative; it was not necessary.
Commonwealth's motion for summary judgment is granted and the cross-motion of Stein denied. Counsel for Commonwealth will present an appropriate order.
NOTES
[1] Stein could not join all of these potential parties on his own motion; he enjoys no privity of contract with any of them except his grantor.