**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1242-19

MICHAEL O'CONNOR and
ASLIHAN O'CONNOR,

     Plaintiffs-Respondents,

v.

ZOHRA, L.L.C.,

     Defendant-Appellant,

and

ZOHRA, L.L.C.,

     Defendant/Third Party
     Plaintiff-Appellant,

v.

MEHMET EMIN TEKIN, SILK
CITY AUTO MALL, ACCEPTANCE
INDEMNITY INSURANCE
COMPANY, SCHUMACHER
INSURANCE AGENCY, and
REGENCY INSURANCE
BROKERAGE SERVICES, INC.,

     Third-Party Defendants/

Respondents.

_____

Argued April 12, 2021- Decided May 3, 2021

Before Judges Fasciale and Rothstadt.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-3951-16.

Kevin E. Wolff argued the cause for appellant Zohra, L.L.C. (Kinney Lisovicz Reilly & Wolff, PC, attorneys; Kevin E. Wolff and Kathleen J. Devlin, of counsel and on the briefs).

Paul M. DiGasbarro argued the cause for Third-Party Defendant-Respondent Acceptance Indemnity Insurance Company (Pomeroy Heller & Ley, LLC, attorneys; Karen E. Heller and Paul M. DiGasbarro, on the brief).

Joseph Ross argued the cause for Third-Party Defendant-Respondent Schumacher Insurance Agency (Lydecker Diaz, attorneys; Lee Patten and Joseph Ross, of counsel and on the brief).

PER CURIAM

Michael O'Connor (plaintiff) was injured when during the course of his employment a garage gate fell on him as he attempted to close it. The gate was located on property owned by defendant Zohra, LLC, (the Landlord or Zohra), which Zohra leased to third-party defendant Mehmet Emin Tekin (Mehmet Tekin or Tenant). Plaintiff settled his personal injury case and is not involved

2

in this appeal. Third-party defendant Silk City Auto Mall (Silk City), a used car dealership, employed plaintiff. Mehmet Tekin and his son, Yasin Tekin, are shareholders of Silk City.

This appeal involves Zohra, Mehmet Tekin, third-party defendant Acceptance Indemnity Insurance Company (Acceptance), and third-party defendant Schumacher Insurance Agency (Schumacher). Zohra alleged that Acceptance failed to name it as an additional insured and otherwise provide insurance coverage to Zohra for plaintiff's accident. Zohra also alleged Schumacher deviated from accepted standards in the insurance-agency industry by failing to review the lease between Zohra and Mehmet Tekin, and then procure necessary insurance to Zohra for plaintiff's accident.

After conducting a bench trial, a judge entered an October 9, 2019 judgment in Zohra's favor concluding that Mehmet Tekin was solely responsible for plaintiff's accident. In addition to listing the October 9, 2019 judgment in its Notice of Appeal, Zohra appeals from four interlocutory orders. Three are dated May 6, 2019: (1) denying in part Zohra's motion for summary judgment;[1]

---

[1] Without specifically briefing arguments challenging this order, it appears from the Case Information Statement and Notice of Appeal that Zohra contends the judge erred by summarily denying its claim for contractual indemnification. We affirm this order because genuine issues of material fact precluded summary judgment on this issue, as explained by the judge.

(2) granting summary judgment to Schumacher Insurance Agency (Schumacher); and (3) granting summary judgment to Acceptance. The fourth order, dated May 31, 2019, denied in part Zohra's reconsideration motion.

We affirm all orders under review.

I.

In support of Zohra's motion for summary judgment, Zohra argued the Lease required Tenant to maintain the gate that caused plaintiff's accident, that Zohra was entitled to contractual indemnification from Mehmet Tekin pursuant to the Lease, that Zohra was entitled to insurance coverage from Mehmet Tekin pursuant to the Lease and that it should not be liable for plaintiff's unpaid medical bills because the employer failed to secure workmen's compensation insurance. The judge granted the motion in part and denied the motion in part. The judge concluded that Mehmet Tekin failed to obtain general liability insurance coverage pursuant to the Lease, and instead procured a limited Garage Policy which disclaimed coverage for plaintiff's injuries, because they would otherwise be covered by workmen's compensation insurance. The judge found that Mehmet Tekin was responsible for Zohra's costs to defend plaintiff's allegations, but denied Zohra's request for indemnification.

In support of Schumacher's motion for summary judgment, Schumacher argued that Zohra's sole claim against it was that Schumacher breached accepted standards by failing to produce the insurance which Silk City had requested, and that if it had done so, Zohra would be afforded coverage under that insurance policy. It further argued that the report of Zohra's broker liability expert (Luu Report) constituted a net opinion. The judge granted Schumacher's motion and issued a written statement of reasons. The judge concluded that the Luu Report was inadmissible net opinion and that, regardless of the actions of Schumacher's employee, Zohra was not entitled to insurance coverage under the policy because of the employee exclusion in the Acceptance policy.

In support of Acceptance's cross-motion for summary judgment, Acceptance argued the employee exclusion precluded coverage to Zohra for plaintiff's injuries. The judge granted Acceptance's motion and issued a written statement of reasons. The judge determined that at the time of the accident, plaintiff was an employee of Silk City, the insured under the Acceptance policy, squarely triggering the employee exclusion and precluding coverage to Zohra for plaintiff's injuries.

Zohra filed a motion for reconsideration arguing the judge incorrectly held that the employee exclusion barred its insurance coverage claim. Zohra also

argued the judge incorrectly held that Mehmet Tekin was not compelled to provide insurance coverage to Zohra under the Lease. The judge concluded that the employee exclusion precluded coverage because Zohra was not an additional insured on the Acceptance policy. But the judge determined that, consistent with his order that Mehmet Tekin pay defense costs, Mehmet Tekin was otherwise obligated under the lease to provide $1,000,000 in insurance coverage to Zohra.

On appeal Zohra raises the following points for this court's consideration:

POINT I

THE STANDARD OF APPELLATE REVIEW OF A GRANT OF SUMMARY JUDGMENT IS DE NOVO AND AN ABUSE OF DISCRETION STANDARD IS APPLIED WHEN REVIEWING A TRIAL [JUDGE'S] DECISION AS TO EXPERT TESTIMONY[.]

POINT II

THE MOTION [JUDGE] ERRED IN GRANTING SUMMARY JUDGMENT TO SCHUMACHER[.]

A. THE MOTION [JUDGE] ERRED IN FINDING THE LUU REPORT WAS NET OPINION[.]

B. IF SCHUMACHER REVIEWED THE LEASE AND MADE SURE ZOHRA WAS IDENTIFIED AS AN ADDITIONAL INSURED IN THE ACCEPTANCE POLICY, ZOHRA WOULD BE ENTITLED TO COVERAGE

A-1242-19

BECAUSE THE EMPLOYEE EXCLUSION DOES NOT APPLY TO ZOHRA[.]

POINT III

THE MOTION [JUDGE] ERRED IN FINDING THAT THE ACCEPTANCE POLICY DOES NOT PROVIDE COVERAGE TO ZOHRA[.]

A.    THE MOTION [JUDGE] ERRED IN FINDING THAT THE EMPLOYEE EXCLUSION APPLIED TO ZOHRA[.] (Raised Below).

B.    ZOHRA WAS AN INTENDED THIRD-PARTY BENEFICIARY UNDER THE ACCEPTANCE POLICY[.] (Raised Below).

C.    THE ACCEPTANCE POLICY PROVIDES COVERAGE FOR GARAGE OPERATIONS THROUGHOUT THE UNITED STATES OF AMERICA[.] (Raised Below But Not Decided).

II.

We begin by addressing Zohra's contention that the judge abused his discretion by finding the Luu Report, authored by Gwenyth P. Luu of JGS Insurance, constituted a net opinion. Zohra argues that this ruling erroneously led to summary judgment in Schumacher's favor. Zohra maintains the Luu Report demonstrates Schumacher breached accepted standards in the insurance agency field by failing to review the Lease, and had it done so, Schumacher would have realized that Zohra was entitled to additional insured coverage.

7                                                                        A-1242-19

We review a ruling on a summary judgment motion under the same standard that governed the trial judge. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995). We "must accept as true all the evidence which supports the position of the party defending against the motion and must accord him [or her] the benefit of all legitimate inferences which can be deduced therefrom[.]" Brill, 142 N.J. at 535 (first alteration in original) (quoting Lanzet v. Greenberg, 126 N.J. 168, 174 (1991)).

"When . . . a trial [judge] is 'confronted with an evidence determination precedent to ruling on a summary judgment motion,' it 'squarely must address the evidence decision first.'" Townsend v. Pierre, 221 N.J. 36, 53 (2015) (quoting Estate of Hanges v. Metro. Prop. & Cas. Ins., 202 N.J. 369, 384-85 (2010)). "[Our] review of the trial [judge]'s decisions proceeds in the same sequence, with the evidentiary issue resolved first, followed by the summary judgment determination of the trial [judge]." Ibid.

A-1242-19

The admission or exclusion of expert testimony is within the trial judge's sound discretion. Id. at 52 (citing State v. Berry, 140 N.J. 280, 293 (1995)). "Absent a clear abuse of discretion, an appellate court will not interfere with the exercise of that discretion." Innes v. Marzano-Lesnevich, 435 N.J. Super. 198, 247 (App. Div. 2014) (quoting Koseoglu v. Wry, 431 N.J. Super. 140, 159 (App. Div. 2013)). An abuse of discretion occurs when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (citation omitted).

N.J.R.E. 702 governs the admissibility of expert testimony and states that: "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." The rule imposes three requirements:

> (1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony.

[Pierre, 211 N.J. at 53 (quoting Creanga v. Jardal, 185
N.J. 345, 355 (2005)).]

Additionally, N.J.R.E. 703 mandates that expert opinions be grounded in "facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts." Ibid. (quoting Polzo v. County of Essex, 196 N.J. 569, 583 (2008)).

"It is well-established that the trial [judge] 'must ensure that [a] proffered expert does not offer a mere net opinion.'" Satec, Inc. v. Hanover Ins. Grp., Inc., 450 N.J. Super. 319, 330 (App. Div. 2017) (second alteration in original) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011)). "Such an opinion is inadmissible and 'insufficient to satisfy a plaintiff's burden on a motion for summary judgment.'" Ibid. (quoting Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 244 (App. Div. 2013)).

The net opinion rule "forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." State v. Townsend, 186 N.J. 473, 494 (2006). A conclusion "based merely on unfounded speculation and unquantified possibilities" is inadmissible. Pierre, 221 N.J. at 55 (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)). The rule requires that an expert provide "'the why and wherefore' that supports the

10

opinion, 'rather than a mere conclusion.'" Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013) (quoting Pomerantz Paper, 207 N.J. at 372)).

Moreover, the expert may not base his or her opinion solely on his or her own subjective standard. Pomerantz Paper, 207 N.J. at 373 (stating "if an expert cannot offer objective support for his . . . opinions, but testifies only to a view about a standard that is 'personal,' it fails because it is a mere net opinion"). In other words, experts must "be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable." Pierre, 221 N.J. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)). However, experts may base their opinions on their personal experience and training. See Townsend, 186 N.J. at 493; see also Rosenberg v. Tavorath, 352 N.J. Super. 385, 403 (App. Div. 2002) (emphasizing that "[e]vidential support for an expert opinion is not limited to treatises or any type of documentary support, but may include what the witness has learned from personal experience").

The Luu Report—three short paragraphs—is just over two pages and includes a single attachment. In a conclusory fashion, Luu opined that "based on [her] training, education and experience" and review of the listed documents

11

that "there exists within a reasonable degree of probability that the care, skill, or knowledge exercised and/or exhibited by Schumacher . . . [i]n securing appropriate [i]nsurance coverage" for Zohra as a third-party beneficiary "fell below the professional standards of due care." She opined that this included the failure to review the lease between Mehmet Tekin and Zohra to verify the correct name of the landlord, the insurance obligations of the tenant/insured, and the locations and addresses of the tenant/insured's business. Specifically, Schumacher failed to verify the name of the landlord "despite being aware that there were likely requirements in the lease regarding insurance requirements;" consider if the minimum coverage amounts were sufficient for a used car dealer; and verify that an inspection of Silk City was performed by Acceptance that would have confirmed the locations and addresses of the insured's business. In her report, Luu opined that it is common practice for professional insurance agents to use a "new/renewal business checklist" to ensure full comprehension of their client's operations and interest of legal entities to be named on the policy. Luu attached an example of the above referenced checklist, titled "New Business Submission Checklist," to her report. The report sets forth a checklist aimed to assist insurance agents in getting their accounts to the "top of [their]

[u]nderwriter's pile." She did not reference or attach any specific insurance industry standards of care, treatises, or sources.

The judge concluded that the Luu report was net opinion and inadmissible to establish a theory of liability as to Schumacher. With respect to the report, the judge stated:

> A review of [the Luu Report] with regard to Schumacher, demonstrates a lack of factual support in reaching the conclusions contained in the report. In contrast[,] the Ahart Report, prepared for Schumacher, contains numerous citations and specific references to the documentary record and footnotes referencing other bases for [Ahart's] analyses. [Ahart] explains that case[] law is part of what various sources such as trade associations and educational programs teach producers and describes how is understanding of Rider v. Lynch, [42 N.J. 465 (1974)] . . . informs his expert opinion that Schumacher fulfilled its duties. [Ahart] further notes the consistency of his opinion with The Chartered Property and Casualty Underwriter [(CPCU)] designation program. [Ahart's] analysis of [the Luu] [R]eport concluded that it attempted to impose a higher duty than is appropriate for a producer such as Schumacher. His review of the Luu Report, the discovery record, and professional standards defined by CPCU concludes that the Luu Report[] attempts, without citation to authority, to impose duties on Schumacher "beyond those of a customary producer" and "more appropriate to duties of a fee[-]based risk manager."

Luu did not cite to any part of the documentary record to support her conclusions. Zohra cites to no authority—and indeed none exists—for its

13

proposition that simply listing the documents provided to Luu for review satisfies its evidentiary burden. Luu's report merely references a "New Business Submission Checklist," which does not set forth any insurance industry standard at all. It does not explain how the omission of any of the included items falls below the standard of care, or leads to any result at all, except not being "on top of [an] Underwriter's pile."

Zohra characterizes the judge's analysis as one that improperly focuses on stylistic differences between the Luu Report and the Ahart (or Schumacher) Report. That is not the case. The judge's reference to the Ahart report and his comparison of the two reports was focused on substance, not style, and properly highlighted that the Luu Report was a net opinion. The Ahart Report, unlike the Luu Report, cited treatises and industry sources such as the CPCU. The judge recognized that Luu's opinion is based on her personal experience, which amounts to an inadmissible net opinion.

Notwithstanding the net opinion issue, and regardless of the actions or inaction of Schumacher or its employees in preparing the lease, the employee exclusion in the Acceptance policy precluded coverage for Zohra on plaintiff's claim.

 A-1242-19

III.

We reject Zohra's contention that the judge erred by granting summary judgment to Acceptance and by denying Zohra's reconsideration motion. Zohra argues the judge erred by relying on the employee exclusion to grant summary judgment to Acceptance. Zohra asserts it is a third-party beneficiary of the Acceptance policy, and that the Acceptance policy provides coverage for Garage Operations.

A.

"The interpretation of an insurance contract is a question of law which we decide [de novo] independently of a trial [judge's] conclusions." Polarome Int'l, Inc. v. Greenwich Ins. Co., 404 N.J. Super. 241, 259-60 (App. Div. 2008). The trial judge's "interpretation of the law and legal consequences that flow from established facts are [therefore] not entitled to any specific deference." Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

An insurance policy must be read as a whole, Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009), and will be enforced as written when its terms are clear, Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 525 (2012). "In assessing the meaning of provisions in an insurance contract, [we] first look to the plain meaning of the language at issue." Oxford Realty Grp.

15

Cedar v. Travelers Excess & Surplus Lines Co., 229 N.J. 196, 207 (2017) (citing Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008)). "The words of an insurance policy should be given their ordinary meaning, and in the absence an of ambiguity, [this court] should not engage in a strained construction to support the imposition of liability." Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 537 (1990). "If the language is clear, that is the end of the inquiry." Oxford, 229 N.J. at 207 (quoting Chubb, 195 N.J. at 238).

"An insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants." Ibid. (citations and internal quotation marks omitted). However, if a policy provision is ambiguous, we will construe the provision in favor of the insured, considering the insured's reasonable expectations. Shotmeyer v. N.J. Realty Title Ins. Co., 195 N.J. 72, 82 (2008).

"Exclusions in insurance policies are presumptively valid and enforceable 'if they are specific, plain, clear, prominent, and not contrary to public policy.'" Wear v. Selective Ins., 455 N.J. Super. 440, 454 (App. Div. 2018) (quoting Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010)). Typically, exclusions are construed narrowly. Ibid. However, we will "not . . . disregard the 'clear import and intent' of a policy's exclusion," ibid. (quoting Flomerfelt, 202 N.J. at 442),

and will not enforce even a "conspicuous, plain and clear" exclusion if it "misleads," <u>Sosa v. Massachusetts Bay Ins.</u>, 458 N.J. Super. 639, 652 (App. Div. 2019) (quoting <u>Gerhardt v. Cont'l Ins.,</u> 48 N.J. 291, 298 (1966)).

The employee exclusion of the Acceptance policy provides that no coverage will be provided for:

> **4. Employee Indemnification and Employer's Liability**
>
> "Bodily injury" to:
>
> a. An "employee" of the "insured" arising out of and in the course of:
>
>> (1) Employment by the "insured"; or
>>
>> (2) Performing the duties related to the conduct of the "insured's business[.]"

The exclusion is clear and unambiguous, and we will therefore construe and enforce it narrowly and in accordance with its plain meaning, which is to preclude coverage for bodily injury to employees of the insured. It is undisputed that "the insured" on the Acceptance policy is Silk City. It is also undisputed that, at the time of the accident, Silk City employed plaintiff. Plaintiff was closing a security gate in the course of his employment with Silk City and in furtherance of Silk City's business. The Acceptance policy contains an exclusion that applies in this very situation, which the judge emphasized when

17

he stated that there is no liability coverage under the policy for bodily injury to an employee of the insured "arising out of and in the course of" plaintiff's employment by Silk City or performing duties related to the conduct of Silk City's used car business.

Zohra nevertheless requests this court consider and apply a line of cases which differentiate between named insureds (the insured) and undisputed additional insureds (an insured) on a policy for purposes of interpreting the exclusion provision. See Gabriele v. Lyndhurst Residential Cmty., LLC, 426 N.J. Super. 96, 100 (App. Div. 2012) (holding that a coverage exclusion for bodily injury for an "employee of any insured" precluded coverage for an additional named insured for a claim by the estate of a worker who sustained injuries when a pallet fell on him a work site); American Wrecking Corp. v. Burlington Ins. Co., 400 N.J. Super. 276, 279 (App. Div. 2008) (holding that a coverage exclusion for personal injury to an "employee of any insured" clearly barred coverage for the claims of workers who sustained injuries during demolition work at a worksite).

In both cases, this court held that there was no liability coverage owed to entities that were undisputed additional insureds. To reiterate, the only additional insured named on the policy before us is Mohammed Mustamand.

18

Moreover, the employee exclusions at issue in those cases were broader (applying to employees of "any insured") and did not indicate specifically that they applied only to employees of "the insured" like the exclusion at issue here does. The Acceptance policy's exclusion specifically extends to apply to "any obligation to share damages with or repay someone else who must pay damages because of the injury."

The judge generally agreed with Zohra's argument about the employee exclusion applying to "the insured" rather than "an insured." The judge denied Zohra's motion for reconsideration, however, because Zohra was not identified as an additional insured on the Acceptance policy. This is true. Zohra therefore cannot argue that it is entitled to coverage as "an insured" when it is not even identified as an additional insured on the Acceptance policy.

Even if Zohra were properly identified as an additional insured on the policy —which is not the case—the employee exclusion would apply to Zohra, and coverage could not be afforded. Schumacher argues that even if Zohra were listed as an additional insured under the policy, it would not be afforded coverage because an entity listed as an "Owner of Garage Premises" is only considered "an insured" with regard to "liability arising out of ownership, maintenance, and use" by the lessee, which was Mehmet Tekin here. Under the

19

Lease, the Owner of Garage Premises is only considered "an insured" with regard to "liability arising out of the ownership, maintenance and use of that part of the described premises which is leased to you." The Acceptance policy defines "you" as the named insured. Here, the named insured in the subject policy is "Eminoglu Used Car Dealer Ltd. d/b/a Silk City Auto Mall." The premises were not leased to Silk City, but to Mehmet Tekin in his individual capacity. As such, the additional insureds, if any, would not be afforded coverage for liability incurred at any of the relevant properties, which were leased to Mehmet Tekin, rather than Silk City.

Moreover, even if it were an undisputed additional insured, Zohra still would not be entitled to coverage under the Acceptance policy because plaintiff's accident occurred on a property distinct from the covered premises listed on the Acceptance policy endorsement.

B.

We likewise conclude that the Garage Coverage provision of the Acceptance Policy did not entitle Zohra to coverage. Zohra argues that it is entitled to coverage because the coverage territory of the Acceptance policy is the entire United States. Acceptance argues that coverage is restricted to the premises listed on the policy, which was distinct from the premises where the

20

accident took place. Although this issue was argued, the judge did not address it as an additional basis upon which to grant summary judgment in favor of Acceptance.

"An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." Flomerfelt, 202 N.J. at 441 (citing Kampf v. Franklin Life Ins. Co., 22 N.J. 36 (1960)). When an "endorsement modifies, qualifies or restricts the terms of the original policy, the . . . endorsement controls." Gabriele, 426 N.J. Super. at 104-05 (internal quotation marks omitted) (quoting 2 G. Couch, Couch on Insurance, § 21.22 (2d ed. 2010); see also 4 Eric Mills Holmes, Appleman on Insurance, § 20.1 (2d ed. 1998) (explaining that "[i]f any irreconcilable conflict exists between provisions of the policy and provisions of an endorsement, then the latter must control."). Applying this principle, the endorsement limiting coverage to 290 Pennsylvania Avenue reflects the intention of the Acceptance policy.

The Garage Coverage Form of the Acceptance policy defines "Garage Operations – Other than Covered Autos" that occur in "Coverage Territory" as follows:

> [O]wnership, maintenance or use of locations for
> garage business and that portion of the road or other

A-1242-19

accesses that adjoin these locations. "Garage operations" includes ownership, maintenance or use of the "autos" indicated in Section I of this Coverage Form as covered "autos." "Garage operations" also include all operations necessary or incidental to garage business.

The Garage Coverage Form defines "Coverage Territory" as the entire United States of America. However, the "Owners of Garage Premises" endorsement to the Acceptance policy, which controls here, specifically limits coverage for any such additional insureds to the listed premises, which were specifically denotated as 290 Pennsylvania Avenue. It is undisputed that an accident involving the security gate occurred at a separate location; 232-242 Railway Avenue, which is not covered.

To the extent we have not addressed Zohra's remaining arguments, we conclude that they are without merit to warrant attention in a written decision. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22